UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARQUITA BIBBS for Herself and as a
Mother and Natural Guardian of
QUE'ARACH BIBBS and ALEXIS GREEN,

                          Plaintiffs,

                                                        **Hon. Hugh B. Scott**


                                                        13CV136A

          v.                                            **Report
                                                        &
                                                        Recommendation**


RENT-A-CENTER EAST, INC.,

                          Defendant.



This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 5). The instant matters before the Court are (a) plaintiffs' motion to compel (Docket

No. 14[1]), and (b) defendant Rent-a-Center East's ("defendant" or "RAC") motion to dismiss or to

compel arbitration or to extend the Scheduling Order (Docket No. 16[2]). Responses to plaintiffs'

---

[1]In support of this motion, plaintiffs submit their attorney's Affirmation, with exhibits,
Docket No. 14; its opposing papers to defendant's motion, discussed below, Docket No. 19.
     In opposition, defendant submits its motion to dismiss or to arbitrate and extend the
Scheduling Order, Docket No. 16, and supporting papers, Docket No. 17, detailed below. In
particular, the declaration of defense counsel, ¶¶ 15-25, respond to this motion.

[2]In support by this motion, defendant submits its attorney's declaration with exhibits,
Docket No. 16, the affidavits of Louis Wasnick, Eric Williams, and Martha Muscarella, each
with exhibits, Docket No. 17, its Memorandum of Law, id.; the Amended Memorandum of Law,
Docket No. 20 (amending the Conclusion, at 22); its Reply Memorandum, with the Declaration
of Andrew Fish, district manager for plaintiff, with exhibit, Docket No. 21; and its Amended
Reply Memorandum, Docket No. 22. Among Williams' exhibits are the settlement and release
agreement ("SAR") and arbitration agreement provision of the rental-purchase agreement
("RPA"), Docket No. 17, Williams Exs. C, A; Docket No. 21, Fish Decl., Ex. A (signed SAR).

motion initially were due by December 4, 2013, with replies (if any) due by December 11, 2013 (Docket No. 15).  After defendant moved, responses to its motion were due by December 4, 2013, with replies to all pending motions due by December 11, 2013, and all motions were deemed submitted as of December 11, 2013 (Docket No. 18).

For convenience and the interrelationship of the motions, plaintiff's motion to compel and defendant's alternative motion for extension of the Scheduling Order are addressed in this Report & Recommendation rather than in a separate Order.

## BACKGROUND

This is a removed diversity personal injury action (Docket No. 1, Notice of Removal). Plaintiffs are New York residents, the renter Alexis Green and Marquita Bibbs and her daughter, Que'Arah Bibbs; defendant is a Delaware corporation with its principal office in Texas (id., Notice of Removal ¶ 8, Ex. A, Compl. ¶¶ 1-3, 4, Ex. C, New York State Department of State, Division of Corporations report).  Plaintiffs allege that they rented (under a rent-to-own rental purchase agreement) a sofa from defendant which was infested with bedbugs (id., Ex. A, Compl. ¶¶ 6-7), and the bedbugs injured Que'Arah Bibbs and Alexis Green (id., Ex. A, Compl. ¶¶ 8-10). Marquita Bibbs has a loss of services and society claim due to the injuries to her child, Que'Arah (id., Ex. A, Compl. ¶¶ 12-13).

---

In opposition, plaintiffs submit their attorneys' Affirmation and Memorandum of Law, Docket No. 19.

In a letter to Chambers dated December 12, 2013, plaintiffs objected to the length of defendant's Reply Memorandum exceeding the page limits under this Court's Local Civil Rule 7(a)(2)(C) (reply memorandum shall not exceed 10 pages).  In apparent response, defendant filed an Amended Reply Memorandum, Docket No. 22, which is closer to the page limitations of that rule (11 numbered pages, but including the cover and caption page).  Despite these deviations from the Local Rules, this Court considered both the oversized and amended Reply Memoranda.

The Bibbs lived with Green. Green, in renting a sofa, may have signed a rental purchase agreement ("RPA") containing an arbitration agreement (Docket No. 17, Williams Aff. ¶ 4, Ex. A) but no agreement signed by Green was produced. Defendant argues that its customer records are not retained beyond one year after an account is closed or inactive, including a charge-off of an account which occurred here (Docket No. 17, Wasnick Aff. ¶¶ 4, 5-8, 1, 3, Ex. A). Such RPAs are standard for defendant and include an arbitration provision as part of its standard language (Docket No. 17, Williams Aff. ¶¶ 3-5). On November 2010, Green entered into a settlement and release agreement ("SAR") with defendant (id. ¶ 19, Ex. C; see Docket No. 1, Notice of Removal, Ex. D, Ans., Ex. "A"), with defendant paying to clean Green's carpet and refund her rental/purchase money for the sofa in return Green released defendant from any and all claims arising from this rental (Docket No. 17, Def. Memo. at 5; Docket No. 17, Williams Aff., Ex. C).

Defendant answered on August 2, 2012 (Docket No. 1, Notice of Removal, Ex. D), asserting (among affirmative defenses) the settlement and release by plaintiffs (id., Notice of Removal, Ex. D, ¶ 8, Ex. A). Defendant made a demand for specific damages sought under New York CLPR 3017(c) (id., Notice of Removal, Ex. E). On January 10, 2013, plaintiffs' counsel reported that they claim damages of $750,000 (id., Notice of Removal, Ex. F).

On May 24, 2013, a Scheduling Order was entered (Docket No. 9), with discovery to be completed by November 25, 2013 (id.).

*Plaintiffs' Motion to Compel*

Plaintiffs, at eve of the discovery deadline, moved to compel the deposition of defendant and its representatives and/or employees prior to the November 25, 2013, deadline (Docket

No. 14).  They argue that the parties agreed to stay discovery while engaging in mediation (Docket No. 19, Pls. Atty. Affirm. ¶ 12; <u>see</u> Docket No. 17, Def. Atty. Decl. ¶ 17, Ex. J), although mediation and pretrial proceedings such as discovery are to occur in tandem and not to have one take precedence over another (<u>see</u> Docket No. 9, Scheduling Order of May 24, 2013, ¶ 2.e.), <u>see</u> W.D.N.Y. ADR Plan § 4.1 C.

Defendant responds to this motion arguing that the parties sought to exclusively mediate this case and agreed not to conduct discovery (Docket No. 17, Def. Atty. Decl. ¶ 17, Ex. J). After the mediation session, the parties deposed Ernest Freidberg, a technician from Ashland Pest Control, Inc., who inspected plaintiff's couches for bedbugs in November 2010 (<u>id.</u> ¶ 19). Defendant believed that Freidberg's testimony favored it and defendant concluded that it would invoke the arbitration provision and asked if plaintiffs were interested either in arbitration or resuming settlement (<u>id.</u> ¶ 20, Ex. K).  Plaintiffs refused arbitration and the parties could not settle this case (<u>id.</u> ¶ 21).  Plaintiffs' counsel responded that the Scheduling Order would not allow time to conduct discovery (Docket No. 14, Pls. Aff. ¶ 4, Ex. B) and wanted to resolve the Scheduling Order deadlines before dealing with defendant's arbitration motion (<u>id.</u>), which "completely surprised" defense counsel (Docket No. 16, Def. Atty. Aff. ¶ 22).  Defense counsel spoke with plaintiffs' counsel on November 8, 2013, regarding the sequence of their respective motions or the depositions plaintiffs sought (<u>id.</u> ¶ 23).

Defendant opposes plaintiff's motion because its refusal to engage in discovery "was driven primarily by its attempt to reduce the number of claims or claimants and to have the matter decided in the forum originally contemplated by the parties, an arbitration" (<u>id.</u> ¶ 24). Defendant notes that plaintiff's motion would be decided after November 25, 2013, and therefore

an Amended Scheduling Order would need to be entered (id., at page 5 n.3). Defendant also complains that plaintiffs have not produced document discovery or had their depositions (id. ¶ 25, Exs. L, M).

The Order setting forth the briefing for this motion also held in abeyance the Scheduling Order deadlines (Docket No. 15; see also Docket No. 18 (scheduling defendant's motion, continuing holding the Scheduling Order deadlines in abeyance)).

*Defendant's Motions*

Included with its response to plaintiffs' discovery motion, defendant moves to dismiss or have this Court deny jurisdiction because of an arbitration provision in the RPA. Defendant also seeks to extend the Scheduling Order. (Docket No. 16.) Plaintiff Green executed an SAR which defendant claims includes release for any personal injury claims she might have arising from the rental of the furniture at issue here, paying $250 to Green for cost of carpet cleaning and $275 refunded to her (Docket No. 17, Def. Memo. at 5; Docket No. 17, Williams Aff. Ex. C).

Defendant next contends that it did not owe a duty of care to plaintiffs, in particular Bibbs and her infant daughter, since they were not signatories to the RPA, hence defendant was not aware of the Bibbses (Docket No. 17, Def. Memo. at 11). It also argues that, if a duty was owed, that defendant did not breach that duty and met the standard of care (id. at 12-14). Defendant denies that a causal link exists between plaintiffs' injuries and any act or omission of defendant given the universality of bedbugs (id. at 15-17).

Citing the RPA provision for arbitration, defendant argues that this case should be stayed for arbitration (id. at 18-21), even absent production of an RPA signed by Green (id. at 19-21).

Alternatively, if its dismissal or stay motions are denied defendant seeks to extend the discovery deadlines since the November 25, 2013, deadline was about to pass when it responded (Docket No. 16, Def. Atty. Aff. ¶ 26). Defendant, however, did not propose a schedule or state how much time it believes will be needed to complete discovery.

Plaintiffs respond that Green did not recall signing an arbitration agreement and that infant plaintiff Bibbs (or her guardian mother) did not sign such an agreement (Docket No. 19, Pls. Atty. Affirm. ¶¶ 16, 17), that the settlement agreement merely was to reimburse Green for her property loss and was not her release of any personal injury claims that she may have from the rental of the sofa (id. ¶ 17; id., Pls. Memo. at 3). They argue that the Bibbses were foreseeable plaintiffs and hence defendant owed them a duty (Docket No. 19, Pls. Memo. at 4-8). They contend that an exception under New York contracts law applies and that defendant is liable to the Bibbses because defendant's actions made the premises more dangerous (id. at 4-5), see Kelley v. Schneck, 106 A.D.3d 1175, 1179, 964 N.Y.S.2d 301, 306 (3d Dep't 2013). Plaintiffs next argue that their testimony stated that bedbugs were infested in the sofa, with Green and Que'Arah Bibbs going to the hospital complaining of insect bites and the third-party pest control technician testifying that bedbug spotting and eggs was found in the furniture (id. at 8). Plaintiffs contend that circumstantial evidence establishes the causal link between defendant's infested sofa and plaintiffs' injuries (id. at 10, citing New York cases). Plaintiffs' initial complaints to treating medical staff identifying the bites as spider or mosquito bites is not determinative to deny their claim of bedbug bites (id. at 10-11). Marquita Bibbs claims that she took video of the sofa with bedbugs from her cellular telephone (id. at 11).

In reply, defendant argues that it resolved all claims that Green had against it in entering the SAR (Docket No. 21, Def. Reply Memo. at 3-5; id., Fish Decl. ¶¶ 8-12, Ex. A; Docket No. 22, Def. Am. Reply Memo. at 2-3). Defendant denies that a mutual mistake exists in the entry of the SAR (Docket No. 21, Def. Reply Memo. at 5-7; Docket No. 22, Def. Am. Reply Memo. at 4-5), concluding that Green at the most argues that a unilateral mistake on her part existed which is insufficient to rescind the SAR (Docket No. 21, Def. Reply Memo. at 7; Docket No. 22, Def. Am. Reply Memo. at 5).

As for breach of duty or causal link, defendant replies that plaintiffs had not shown "with any direct or conclusive and reliable circumstantial evidence" that the couch at issue had bedbugs when delivered to plaintiffs (Docket No. 21, Def. Reply Memo. at 8 & n.23, citing cases, e.g., American Ins. Co. v. City of Jamestown, 914 F. Supp.2d 377, 386 (W.D.N.Y. 2012) (Arcara, J.) (summary judgment motion); Docket No. 22, Def. Am. Reply Memo. at 5 n.17 (same)). Defendant questions the sufficiency of the evidence plaintiffs now offer to establish causation (Docket No. 21, Def. Reply Memo. at 9-10; Docket No. 22, Def. Am. Reply Memo. at 6-9), arguing that plaintiffs' own reports of their injuries to medical staff claimed it was due to spider bites (Docket No. 21, Def. Reply Memo. at 11; Docket No. 22, Def. Am. Reply Memo. at 7).

Regarding arbitration, defendant asserts that the arbitration provision included an opt-out provision that Green did not exercise (Docket No. 21, Def. Reply Memo. at 15 & nn.53, 55; Docket No. 22, Def. Am. Reply Memo. at 9-10; see Docket No. 17, Williams Aff. Ex. A). Defendant argues that plaintiffs claim that they all had a contractual relationship with plaintiff; if that was the case, defendant concludes that they are all bound by the arbitration provision and

plaintiffs cannot pick and choose contract provisions that apply to them (Docket No. 21, Def. Reply Memo. at 17; Docket No. 22, Def. Am. Reply Memo. at 11).

## DISCUSSION

I.    Standards

A.    Motion to Dismiss

Defendant has moved to dismiss the Complaint on the grounds that it states a claim for which relief cannot be granted.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007).  To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As recently reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), rev'g Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .

The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid.</u> Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

If on a motion to dismiss under Rule 12(b)(6) and matters outside the pleadings are presented, the motion must be treated as one for summary judgment under Rule 56. The Local Civil Rules of this Court require for summary judgment that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, <u>id.</u> R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, <u>id.</u> R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered

paragraph in the opponent's statement, id. Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

B.      Motion to Compel

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007). Initial disclosure includes producing "a copy of, or a description by category and location of, all documents . . . that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims . . . ." Fed. R. Civ. P. 26(a)(1)(B).

Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Rule 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A).

C.        Choice of Law

None of the parties argued which jurisdiction's substantive law applies, although both sides cite New York's substantive law (e.g., Docket No. 17, Def. Memo. at 7; Docket No. 19, Pls. Memo. at 4). This is a personal injury action (see Docket No. 1, Notice of Removal, Ex. A, Compl.) and not a contract action. The physical injuries occurred in New York.

As a diversity action, the procedures are governed by federal law and rules, while the substantive law is governed by state law, see Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 116 n.4 (2d Cir. 2002). A federal court sitting in diversity applies the choice of law rules from the state in which it sits. Klaxon v. Stentor, 313 U.S. 487 (1941). In personal injury actions, New York generally applies the law of the jurisdiction in which the injury occurred. See Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993); Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972). "New York's current choice-of-law rules require the court to consider the following three elements: the domicile of the plaintiff, the domicile of the defendant, and the place where the injury occurred." Lucas v. Lalime, 998 F. Supp. 263, 267 (W.D.N.Y. 1998) (Heckman, Mag. J., R&R, adopted by Arcara, J.). Where more than one element is in the same state, that state's law should apply. Id.; Datskow v. Teledyne Continental Motors, 807 F. Supp. 941, 943 (W.D.N.Y. 1992) (Larimer, J.) Under New York choice of law rules, however, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the jurisdiction involved." Matter of Allstate Ins. Co., 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993). This Court need not determine which forum's law applies where the relevant issue would turn out the same under the fora's law and no true conflict exists, Elgin Sweeper Co. v.

Melson Inc., 884 F. Supp. 641, 648 (N.D.N.Y. 1995); Howard v. Clifton Hydraulic Press Co., 830 F. Supp. 708, 712 (E.D.N.Y. 1993). Additionally, where New York law and the other fora's laws have no material differences, New York law applies, Elgin Sweeper, supra, 884 F. Supp. at 648.

Here, plaintiffs are New York State residents, defendant is a Delaware corporation headquartered in Texas but licensed to do business in New York and the incidents occurred in New York. No one has suggested either Delaware or Texas law applies or has a different outcome than under New York law. Thus, the tort claims asserted here are governed by New York law. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743 (1963); Lucas, supra, 998 F. Supp. at 267.

Defendant invokes the RPA's arbitration provision, which is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., with the RPA declaring that Texas law would determine the validity and enforceability of the arbitration provision (Docket No. 17, Williams Aff., Ex. C).

II. Application

A. Which Motion to Address First

This Court will address first defendant's motions to dismiss or to deny this Court jurisdiction based on the arbitration provision, since if this Court lacks jurisdiction, the discovery and timing of pretrial proceedings become moot. Depending upon resolution of these motions, this Court next may address plaintiffs' motion to compel and the defendant's motion to extend the Scheduling Order (and implicit in plaintiffs' motion, given the passage of the deadline for discovery and when they seek to depose defendant's witnesses by November 25, 2013).

B.    Settlement and Release

This SAR was entered by adult plaintiff Green only and she did not sign for the infant

plaintiff Bibbs or for Marquita Bibbs.  Defendant argues the capacity of Green as a mature adult

to sign the SAR (Docket No. 17, Def. Memo. at 9) and later argues that it was not aware of the

Bibbses as potential plaintiffs because it entered into the contract with Green only (id. at 11).

This agreement did not bar or release claims of the Bibbses.  By its express terms, it was an

agreement between defendant (and its subsidiaries and affiliates) and Green alone, the renter.

Thus, if effective, the scope of the SAR only includes claims made by Green.

Under the SAR, Green "releases and forever discharges" defendant from "any and all

claims, demands, charges, complaints, actions, causes of action, debts or liabilities of any kind

whatsoever, by common law, by statute, in tort, in equity or otherwise" arising from "any

transaction, act, or event, including without limitation anything in the rent-to-own relationship

between the Parties, the transactions, acts, events and the incident described" in that agreement

(Docket No. 17, Williams Aff. Ex. C, ¶ 3; see also Docket No. 1, Notice of Removal, Ex. D,

Ans., Ex. "A").  The parties to that SAR intended "to resolve all claims, complaints, and causes

of action of any kind whatsoever that **Green** may have against [defendant] whether known or

unknown at the time or in the future" (Docket No. 17, Williams Aff. Ex. C, third paragraphs;

Docket No. 17, Def. Memo. at 8, emphasis added).  Plaintiffs now argue that Green did not

understand this to be a release of **all** her claims, including personal injury claims now alleged in

this action (Docket No. 19, Pls. Atty. Affirm. ¶ 17).

While the SAR was to address the property or monetary damages that Green might have

claimed (for cleaning her carpet and reimbursing rental or purchase payments she made), its

language is broad enough to cover any other claim Green could make, including any personal injury claims she might have arising from this rental.  Plaintiffs argue that Green's physical injuries were not contemplated when the SAR was executed (see Docket No. 19, Pls. Memo. at 2-3, citing Mangini v. McClurg, 24 N.Y.2d 556, 301 N.Y.S. 508 (1959)) and that there was a mutual mistake in entering a release where Green intended it only for her property losses (id. at 3-4).  But there was no mutual mistake here; at the most, Green may have been mistaken in not realizing the broad scope of the release that she would be releasing personal injury claims she may have as well as property damage or refund claims.  There was no proof defendant understood the release it drafted was limited to only recovery of property damage or rental payments.  As noted by defendant (Docket No. 21, Def. Reply Memo. at 4-5, 7-8; see Docket No. 17, Def. Memo. at 9-10), plaintiff's failure to read the SAR or to have counsel when she signed the SAR are not bases to invalidate the SAR as mutual mistake or sufficiently egregious unilateral mistake.

Defendant's motion to dismiss **only as to Green pursuant to her signed SAR** should be **granted**, but **denied** as to plaintiffs Bibbs and her daughter.

C.     Arbitration

Plaintiffs argue that Green does not recall signing an arbitration agreement (Docket No. 19, Pls. Memo. at12-15; Docket No. 19, Pls. Atty. Affirm. ¶ 17), hence this case should not be arbitrated.  Also, plaintiffs point out that no signed arbitration agreement has been produced (Docket No. 16, Pls. Atty. Affirm. ¶ 16).

Defendant cites to its standard rental-purchase agreement (Docket No. 17, Williams Aff. Ex. A), which contains the arbitration provision, inferring that a similar form agreement was

executed here by Green.  Also produced are the computer records for Green's account which notes the entry into a RPA and her final payment, and the fact that this account was purged from defendant' records pursuant to its normal record retention policy for removing records one year after an account is closed.  (E.g., Docket No. 17, Williams Aff. ¶¶ 2-5, 6, 8-11, Ex. A; Wasnick Aff. ¶¶ 1-8, Exs. A (computer summary printout of plaintiff's rental purchase agreement), B (printout of plaintiff's payments made on rental agreement).)

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., favors arbitration.  The issue here is whether Green agreed to arbitrate.  As will be discussed below, defendant's motion and plaintiff Green's response creates an issue of fact as this motion to dismiss is converted into one for summary judgment.  But recommending defendant's motion to dismiss as to Green based upon her execution of the SAR may preclude consideration of arbitration as to her claims.

This dismissal on other grounds might end the arbitration inquiry but for the fact that defendant's argues that the arbitration clause also covers the other plaintiffs, the Bibbses.  As with the SAR discussed above, there is no agreement as to the other plaintiffs, Marquita Bibbs and the infant Bibbs, to arbitrate their claims.  Only Green signed the RPA with its arbitration clause (Docket No. 17, Williams Aff. ¶ 6; id., Wasnick Aff. ¶¶ 5-7, Exs. A, B) and not the Bibbses.  These two agreements were between the renter-purchaser Green and defendant only (see Docket No. 17, Def. Memo. at 11, arguing that the Bibbses did not sign any documentation as a customer).  Defendant argues that plaintiffs claim that they were parties to the RPA and thus parties to that entire agreement, including its arbitration clause (id. Def. Memo. at 20; Docket No. 21, Def. Reply Memo. at 17), citing the District of Maryland's decision in Seney v. Rent-A-Center, Inc., 909 F. Supp.2d 444 (D. Md. 2012) (Docket No. 17, Def. Memo. at 20; Docket No.

21, Def. Reply Memo. at 17). In <u>Seney</u>, that court denied those plaintiffs' argument that the two minor children plaintiffs were not signatories to the rental-purchase agreement and thus should not be included in the arbitration provision, <u>id.</u>, at 454. Those plaintiffs' (the renting parent, two infant children, and another adult family member) claims were for breach of warranties under that agreement, <u>id.</u> at 446-47, and the district court held that the sole basis for the suit was those breaches and "anyone claiming the benefit of an agreement–including implied warranties–is also subject to the burdens of the agreement," there the arbitration provisions, <u>id.</u> at 454.

In the case at bar, however, this is tort claim, alleging negligence, carelessness, and recklessness of defendant in renting furniture infested with bedbugs (<u>see</u> Docket No. 1, Ex. A, Compl. ¶¶ 6-9; <u>cf.</u> Docket No. 17, Def. Memo. at 21 n.74, noting plaintiffs' bill of particulars response that the "incident occurred because of merchandise [plaintiffs] rented from RAC and that RAC was negligent in allowing the rental of defective merchandise"); there is no allegations of breaches of warranties or claims under the RPA by infant Bibbs.

There is no basis to compel essentially third parties (the Bibbses) to arbitrate their tort claims under a RPA that they did not sign and are not parties to. Thus, defendant's motion to stay this action pending arbitration pursuant to the RPA should be **denied**.

    D.     Merits

        1.     Motion to Dismiss

Defendant argues that it did not owe a duty to the Bibbses, that plaintiffs failed to establish a causal nexus between their injuries and defendant's rented sofa, even disputing whether there were bedbugs on the furniture or whether bedbugs were the source of Green and Que'Arah Bibbs' injuries. Plaintiffs respond on the merits.

However, this is a motion to dismiss, which is based upon the pleadings (and attachments thereto) and their sufficiency.  This Court must presume the facts alleged in those pleadings are true.  Here, defendant argues that plaintiffs have not produced sufficient evidence that the sofa was infested with bedbugs when delivered, producing evidence beyond the pleadings for a motion to dismiss.  The parties contest the testimony of a third party pest control technician (e.g., Docket No. 17, Muscarella Aff., Ex. A; Docket No. 19, Pls. Atty. Affirm. ¶¶ 14-15).  If additional evidence is produced (as is here by both parties) with the motion, it is converted under Rule 12(d) into a motion for summary judgment, which requires a statement of material facts, W.D.N.Y. Loc. Civ. R. 56; neither side filed such a statement.

Given that plaintiffs' discovery is still outstanding (the initial motion before this Court is their motion to compel), under Rule 56(d), summary judgment could be denied as being premature until discovery is completed.  These issues of fact and the state of proceedings in this action should **preclude their decision at this time**.

2.      Duty of Care

The duty of care owed by defendant is a legal issue that can be resolved here without resort to papers beyond the pleadings, cf. Gonzalez v. Caballero, 572 F. Supp. 2d 463, 466 & n.2 (S.D.N.Y. 2008) (Chin, J.) (the court did not rely upon additional papers in motion for judgment on the pleadings in reaching its decision).  Defendant cites Gonzalez, id., for the proposition that no duty of care was owed by defendant to third parties and that any contractual liability is owed only to the renter, Green (Docket No. 17, Def. Memo. at 11).  In Gonzalez, defendants Caballero and New England Motor Freight, the shipping company Caballero worked for, delivered a heavy item to plaintiff's employer, leaving it on the street.  Plaintiff claims that Caballero did not offer

to help move the package inside. Plaintiff thus attempted to move it himself and injured himself in the process. Plaintiff sued defendants claiming that they were negligent in the delivery of the item, contending that they failed to exercise reasonable care when Caballero left the item in the street and refused to help to move it inside. Id. at 464-65. On defendants' Rule 12(c) motion for judgment on the pleadings, they argued that they owed no duty to plaintiff as a matter of law, id. at 465. The court agreed with defendants that no duty was owed there because the shipper defendant had a contractual obligation only to the employer and did not have a duty to plaintiff when he gratuitously engaged in moving the shipment without assistance or equipment, id. at 467.

Plaintiffs argue that the duty exists between defendant and the Bibbses from the "simple common sense, and sound public policy, that when one member of a household buys and/or rents a new piece of furniture, all members of the household are protected by the duty of care owed to the first" (Docket No. 19, Pls. Memo. at 6). They state this proposition while only citing to New York cases which outline the general parameters for legal duty in tort law (id. at 5-6, citing, e.g., Hamilton v. Baretta U.S.A. Corp., 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 12 (2001); Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 820 (1994)). Neither party has pointed to a case where furniture acquired by one family member exposed the retailer to a duty to protect other family members for any hazard or defect in the product. Defendant admits that it could not find any cases where third parties sought recovery for a family member's rental of infested merchandise (Docket No. 17, Def. Memo. at 12). Defendant does cite Ferguson v. Dollar Rent A Car, Inc., Index No. 110409/08, 2012 N.Y. Misc. LEXIS 849 (N.Y. Sup. Ct. N.Y. County Feb. 28, 2012), aff'd, 2013 N.Y. App. Div. LEXIS 432 (1st Dep't Jan. 29, 2013) (Docket

No. 17, Def. Memo. at 12 n.40), which held that there was no duty owed by the car rental company to non-contracted driver. In that case, the plaintiff was about to park the vehicle for the renter when she was wrongfully arrested for possession of stolen property, leading to her action against defendant Dollar Rent A Car for false arrest and wrongful imprisonment, id. After denying that defendants owed a prima facie duty of care to plaintiff, plaintiff argued that a duty of care arose from the rental agreement Dollar made with the renter, id. at *8, an argument rejected by the court, see id. at *8-10.

Under New York law, the duty of reasonable care owed by a tortfeasor is "elemental to any recovery in negligence," Palka, supra, 83 N.Y.2d at 584, 611 N.Y.S.2d at 820. Unlike foreseeability or causation, "which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration," id., 83 N.Y.2d at 585, 611 N.Y.S.2d at 820. It is axiomatic that "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation," Palsgraf v. Long Is. R.R. Co., 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928); Palka, supra, 83 N.Y.2d at 585, 611 N.Y.S.2d at 820. "Common-law experience teaches that duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility. These sources contribute to pinpointing and apportioning of societal risks and to an allocation of burdens of loss and reparation on a fair, prudent basis," Palka, supra, 83 N.Y.2d at 585, 611 N.Y.S.2d at 820. The New York State Court of Appeals in Palka recognized that "while the existence of a duty involves scrutiny of the wrongfulness of a defendant's action or inaction, it correspondingly necessitates an examination

of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty," 83 N.Y.2d at 585, 611 N.Y.S.2d at 820.

Where, as here, a contract underlies the negligence claim, "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party," Espinal v. Melville Snow Contrs., 98 N.Y.2d 136, 138-39, 746 N.Y.S.2d 120, 122 (2002).  In H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 168, 159 N.E. 896, 898-99 (1928), Chief Judge Cardozo stated that imposing liability could render the contracting party liable in tort to "an indefinite number of potential beneficiaries," denying liability to a contractor furnishing water for hydrants, see Espinal, supra, 98 N.Y.2d at 139, 746 N.Y.S.2d at 122.  Decisions from the New York State Court of Appeals thus recognize three situations in which a contractor may face tort liability to third parties: where the contractor, in failing to exercise reasonable care in the performance of the duties launches a force or instrument of harm; where the plaintiff detrimentally relies on the continued performance of the contractor's duties; and where the contractor has displaced the other party's duty to maintain the premises safely, Espinal, supra, 98 N.Y.2d at 140, 746 N.Y.S.2d at 123.

Here, although the Complaint alleges that "plaintiffs" rented the furniture at issue, only Green rented the furniture, notwithstanding arguments by plaintiffs that they do not concede that defendant owed any **contractual** duty to the Bibbses (Docket No. 19, Pls. Memo. at 5).  Absent falling within the three recognized exceptions, the Bibbses as third parties to the RPA have no tort claim based upon the contract.  The policy articulated by plaintiffs here to extend this duty to the renter's or purchaser's household may come with the unintended consequence that if this duty

is contractual, then (as defendant argues here) the full contract applies to those in the household making claims under it, including (for example) arbitration provisions.

The issue then is whether it was foreseeable that a renter of furniture would have it used by undisclosed occupants of the renter's home who would use furniture rented by a vendor. If this were a warranty claim, under the Uniform Commercial Code a seller's warranty extends to "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty," U.C.C. § 2-318 (Alternative A); cf. N.Y. U.C.C. § 2-318 (seller's warranty extends to "any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods", adopting Alternative B). New York's U.C.C. provision was intended to be broader than one's family or household, see Singer v. Federated Dep't Stores, Inc., 112 Misc. 2d 781, 783, 447 N.Y.S.2d 582, 584 (N.Y. Sup. Ct. N.Y. County 1981).

Here, this is a negligence claim without any express or implied warranty claims alleged. While use by occupants of furniture readily can be anticipated, what is not reasonably known to the vendor is who those particular occupants might be. Defendant here contracted solely with Green and there is nothing in the pleadings or the moving papers indicating that defendant was aware of the existence of the Bibbses or their living arrangements with Green or that they would use the furniture Green had rented from defendant. Vendors rarely ask who will use the merchandise they are selling or renting. Absent additional notice to the vendor of users other than the purchaser or renter (or the three instances of third party liability already recognized under New York law), the reasonable duty of care does not extend to non-contracting users.

Absent such notice to the defendant vendor, it is not reasonable to extend a duty of care potentially to the universe of occupants and invitees.

The result in Palka is distinguishable; there, the Court of Appeals held that those entering a hospital (a public space) had a reasonable expectation that someone was in charge of basic safety inspections and maintenance and defendant, contracted to provide those services, owed a duty of care to all occupants of the hospital including plaintiff employees, 83 N.Y.2d at 585-90, 611 N.Y.S.2d at 820-23. Here, the sofa was going into a private home defendant had no way of knowing who aside from the contracting party Green would occupy it. Defendant did not know the composition of Green's household until being served with the Complaint and its caption listing plaintiffs all living at the same address (cf., Docket No. 1, Notice of Removal, Ex. A, Compl.).

This Court also has not located cases with a scenario similar to the Bibbses' situation, where one occupant obtains the alleged tortious instrument which harms another occupant. The Fourth Department, however, denied the claim of an attorney against a moving company when she was injured when a bookcase fell during a relocation of her office, Case v. Lincoln Moving & Stor. of Buffalo, Inc., 55 A.D.3d 1294, 1294-95, 865 N.Y.S.2d 433, 434-35 (4th Dep't 2008), upholding the grant of summary judgment to defendant mover. The Fourth Department rejected plaintiffs' contention that defendant assumed a duty of care by launching an instrument of harm in moving plaintiff attorney's bookcase, id., 55 A.D.3d at 1295, 865 N.Y.S.2d at 435; see also Espinal, supra, 98 N.Y.2d at 140, 746 N.Y.S.2d at 123.

The Bibbses did not rely upon defendant's performance of its rental-purchase agreement with Green to their detriment nor did defendant displace Green's duty to maintain the premises.

The sole possible argument is whether, by delivering the allegedly infested furniture, defendant launched an instrument of harm.  Courts in Espinal, supra, 98 N.Y.2d at 142, 746 N.Y.S.2d at 124 (snow plow contractor in removing snow but allegedly leaving slippery conditions), and (as stated above) in Case, supra, 55 A.D.3d at 1295, 865 N.Y.S.2d at 435, rejected the instrument of harm allegations in their respective cases. Defendant also did not assume a duty of care by launching an instrument of harm here.

Fair apportionment of societal risk here has the duty of care extend only to the disclosed customer of the product.  Therefore, defendant's motion to dismiss on the absence of a duty of care to the Bibbses should be **granted**.

III.    Motion to Compel

If the above recommendations survive objections, no remaining claims exist.  Therefore, any discovery in this action would cease and plaintiffs' motion to compel (Docket No. 14) would be **denied as moot**.  The alternative defense motion of amending the Scheduling Order to allow completion of this discovery (see Docket No. 17, Def. Motion) is also **deemed moot**.  If these recommendations are modified or rejected and claims remain for adjudication, plaintiffs' motion to compel and the schedule for this action will be revisited.

**CONCLUSION**

Based upon the above, it is recommended that defendant's motion to dismiss (Docket No. 16) should be **granted**, its alternative motion to stay this action pending arbitration (id.) be **denied**.  Specifically, plaintiff Green's claims **should be dismissed** on the basis of the Settlement and Release Agreement she executed and the claims of plaintiffs Que'Arah and

23

Marquita Bibbs **should be dismissed** for the absence of a duty of care owed to them by defendant.

In light of this recommendation, plaintiffs' motion (Docket No. 14) to compel and defendant's alternative motion to extend the Scheduling Order deadlines (Docket No. 17) are **denied as moot** (subject to revision following disposition of this Report and any objections thereto).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
December 19, 2013